UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE TAYLOR,

                  Plaintiff,                      Case No. 2:17-cv-12271
                                                          District Judge David M. Lawson
v.                                                    Magistrate Judge Anthony P. Patti

CORIZON MEDICAL
CORPORATION and THE
MICHIGAN DEPARTMENT OF
CORRECTIONS,

                  Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE PLAINTIFF'S MOTION TO EXPEDITE SURGERY (DE 24) AND MOTION FOR RELIEF SOUGHT (DE 34)

**I.**     **RECOMMENDATION**:    The Court should deny without prejudice Plaintiff's motions that seek injunctive relief (DEs 24 and 34), as described in further detail below.

**II.**     **REPORT:**

    **A.**     **Background**

    Plaintiff, Maurice Taylor, a state inmate who is proceeding without the assistance of counsel, filed this action on July 11, 2017, along with an application to proceed *in forma pauperis*, naming as Defendants Corizon Medical Corporation

("Corizon") and the Michigan Department of Corrections (MDOC).[1]  (DEs 1, 2.)
Plaintiff alleges that he is not receiving adequate medical care for his glaucoma
and cataracts, and he asserts a claim for deliberate indifference to his serious
medical needs.  (DE 1 at 3.)  The Court has recently sought the recruitment of
counsel through its pro bono panel on Plaintiff's behalf.

On May 2, 2018, the Court held a status conference with the parties, with
Plaintiff appearing via videoconference and attorney Carly A. Van Thomme
appearing in person for Corizon.  The Court addressed, among other things,
Plaintiff's requests for medical care and Corizon's motion to compel seeking
execution of medical authorization forms for release of Plaintiff's complete
medical records from the MDOC.  Notably, Plaintiff explained at the status
conference that he has recently learned that surgery has been scheduled, although
(apparently for security reasons, to avoid an escape) he is not informed of the exact
date.  Nevertheless, following that status conference, the Court ordered Plaintiff to
execute authorizations for release of his complete medical records from the MDOC
to counsel for Corizon.  That Order further directed the MDOC release those
records expeditiously upon receipt of the executed authorization. (DE 48.)

### B.    Plaintiff's Motions

---

[1] Defendant MDOC has subsequently been dismissed with prejudice.  (DEs 41, 44.)

On December 19, 2017, Plaintiff filed a one-page "Motion for Expedited Surgery[,]" in which he requests an order that "Defendants expedite cataract and glaucoma surgery for Plaintiff's right eye."  He asserts that he "has suffered from the afflictions for too long and it is vital that he receive surgery before his condition can not be completely cured with a single surgery."  (DE 24.)  Corizon filed a response opposing Plaintiff's motion on January 2, 2018, arguing that Plaintiff's "two-sentence" motion fails to satisfy the standard for obtaining preliminary injunctive relief, and explaining that it has requested that Plaintiff release a copy of his MDOC medical records, but that it does not yet have those records.  (DE 27.)

On February 16, 2018, Plaintiff filed a "Motion for the Relief Sought," again asserting that he is being deprived of a needed operation for cataracts and glaucoma.  He contends that he "has lost 98% percent [sic] of his vision in his right eye which is what this action is about," and that Corizon continues to "demonstrate 'deliberate indifference' in this matter."  (DE 34.)  Corizon responded to this motion on February 21, 2018, explaining again that it has requested that Plaintiff release a copy of his MDOC medical records, but that it does not yet have the records.  Corizon further noted that it had filed a motion to compel Plaintiff to release those records, which then remained pending.  Corizon then argued again

that Plaintiff's "bare bones motion" fails to satisfy the stringent standard for preliminary injunctive relief.  (DE 35.)

## C.    Standard

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Northeast Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether the plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).  "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Id.*

"[T]he preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it," *Leary*, 228 F.3d at 739, and is "never

4

awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.3d at 739.  Thus, a plaintiff must affirmatively demonstrate his entitlement to injunctive relief.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case, but to obtain affirmative relief.  The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas*, 451 U.S. 395.  Because of this, courts have identified three types of particularly disfavored preliminary injunctions:  "(1) preliminary injunctions that alter the status quo; (3) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of the trial on the merits." *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005).  Motions seeking such preliminary injunctions must be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988).  Moreover, where a prison inmate seeks an order enjoining state prison officials, the Court is required to proceed with the utmost care and must be cognizant of the unique nature of the

prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). Indeed, the Prison Litigation Reform Act requires that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires the preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

### D.    Analysis

#### 1.    Substantial likelihood of success on the merits

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Eighth Amendment deliberate indifference claim. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not clear from Plaintiff's *pro se* complaint that he has a substantial likelihood of success on his Eighth Amendment deliberate indifference claim. He acknowledges that Corizon has been treating his glaucoma with "multiple eye drops" for "several years," but complains that he has been denied "a cataract operation for on his right eye." (DE 1, ¶¶ 5, 9.) However, Plaintiff does not rely on any medical records to support his contention that he is being improperly denied medical care, that he is even a viable candidate for such surgery or even to demonstrate that he has in fact been diagnosed with either

glaucoma or cataracts.  (*See* DEs 1, 24, 34.)   *See Crump v. Mich. Dep't of Corrs.*, No. 11-12146, 2012 WL 1019616, at *2 (E.D. Mich. Mar. 26, 2012) (recognizing that "[g]iven the nature of injunctive relief, Plaintiff cannot merely rest on his pleadings and allegations without any support of evidence that the circumstances require such relief.").  It is well established that differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim.  *See Shehee v. Saginaw Cty.*, 86 F.Supp.3d 704, 714-15 (E.D. Mich. 2015) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995)).  Where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Plaintiff's medical records have not yet been produced or made a part of the record, and Plaintiff's allegations here are not sufficient at this early stage of the proceedings to constitute a substantial showing that he will successfully prove that Corizon's conduct rises to the level of deliberate indifference to prove an Eighth Amendment claim.  *See Saadeh v. Hemingway*, 37 F. App'x 194, 195 (6th Cir. 2002) (holding plaintiff's motion for injunctive relief was properly denied because his complaint—that he was not being properly treated for back pain—failed to state a claim of an Eighth Amendment

violation).  The Court at this juncture simply does not have a supported medical or factual basis on which to order surgery or treatment.  If and when there is such a record, Plaintiff may certainly renew his request.

### 2.    Irreparable harm

The second factor, the presence of irreparable harm, does not strongly support the issuance of a preliminary injunction, although with proper medical support, it conceivably could in this case, in light of the potentiality of Plaintiff suffering blindness.  A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages.  *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Although Plaintiff may continue to experience issues with his vision during the course of this litigation, it is not clear that any harm would be irreparable. Plaintiff states in his complaint that he is receiving treatment for his glaucoma (DE 1, ¶ 5), and he acknowledged during the parties' May 2, 2018 video status conference that he recently has been scheduled for lens-replacement surgery on both of his eyes.  Further, it is an open question whether he will successfully prove that Corizon is deliberately indifferent to his serious medical needs in their recommended treatment of his eyes, or whether his complaint instead involves a difference of opinion with his care providers.  *See Rhinehart v. Scutt*, 509 F. App'x 510, 514 (6th Cir. 2013) (noting, in denying preliminary injunctive relief, that the

plaintiff is receiving some medical care and  that "the harm which [plaintiff] claims is really no more than a demand for this court to substitute its own judgment in place of that of medical professionals"). Thus, it is not clear that any harm would be irreparable.

### 3.  Interests of third parties and the public at large

Finally, the interests of identifiable third parties and the public at large weigh against an injunction.  "The MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care, and in contracting with licensed medical providers such as PHS.  The public has an interest both in ensuring that prison inmates receive medical care, and also in having a well-regulated and operated prison system.  PHS and its medical personnel have an interest in practicing medicine based on their best medical judgment and on the needs of their patients." *Robbins v. Payne*, No. 11-15140, 2012 WL 3584235, at *3 (E.D. Mich. July 9, 2012) (denying plaintiff's motion for preliminary injunctive relief), *report and recommendation adopted*, 2012 WL 3587631 (E.D. Mich. Aug. 20, 2012).  Decisions concerning medical care are vested in prison officials, in the absence of any constitutional violation, and any interference by the federal courts in the administration of state prisons is necessarily disruptive.  *Rhinehart*, 509 F. App'x at 516 (recognizing that "in the absence of a likely constitutional violation … separation of powers and federalism

strongly discourage the federal courts from entangling themselves in the administration of state prison health care systems") (citations omitted). The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Further, because Plaintiff's requested relief would alter the status quo, the public interest is not served by granting the request for preliminary injunctive relief.

### E. Conclusion

In sum, balancing the above factors weighs against a grant of preliminary injunctive relief, at least at this time and on this record. Therefore, for the reasons stated above, Plaintiff's requests for preliminary injunctive relief (DEs 24, 34) should be **DENIED without prejudice**.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 10, 2018                        s/Anthony P. Patti
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on May 10, 2018, electronically and/or by U.S. Mail.

                                           s/Michael Williams
                                           Case Manager for the
                                           Honorable Anthony P. Patti